The next matter on our calendar is General Ray Life v. Lincoln National Life. Good morning. Good morning, Your Honors. Hugh Balsam representing General Ray Life. I'd like to discuss two issues with you this morning. First, the recapture language in the final award was not ambiguous or otherwise flawed, so the panel had no authority to revisit it. Second, the clarification that the panel issue was not consistent with the final award and the intent behind it, but rather a material change in the recapture methodology that increased Gen Ray's liability by $17 million. The first award said that you could come back if you want recalculation, correct? Yes, Your Honor. And your argument is this is more than recalculation? This is way more than recalculation. Whose fault is it that this wasn't brought before the first arbitration panel, how to unwind? It was Lincoln's fault. We raised it five separate times, this exact language. We raised it pre-arbitration, we raised it in the slides during the arbitration, and we raised it in all three proposed awards. The real focus in the initial arbitration was whether you were entitled to a higher premium. Exactly. This was completely not the focus. Then after that decision, if you were entitled to that, then there was a second decision that Lincoln would make.  Recapture. Recapture. Until Lincoln knew whether A, you could charge the premium, or B, they wanted to pay it, the unwinding was irrelevant, isn't it? The unwinding was . . . most lawyers will make a fallback argument. I understand what most lawyers will do, but the question is what did the arbitrators have to decide the first time? The arbitrators did not have to decide whether to unwind. If they had decided, it would be purely dicta. We wouldn't necessarily decide it. If you were litigating that case with us, that would be a question we wouldn't have to answer. You would not have to answer, but it could come up. It could. If there was a right of recapture in the treaty, if there was a rate increase that was allowed, which there was, then Lincoln had a right of recapture. Assume you'd lost. Who cares about the unwinding? Right, but if we won, one of the possibilities . . . Assume that they decide to pay. Who cares? One of the possibilities is that we win, and if we win . . . Let me finish. That doesn't guarantee that they'll unwind. No, but they had a right then to rewind, and we proposed we had to unwind. We had proposed the methodology numerous times. If Lincoln had had a problem with it, they had an opportunity to fight it. Let me test my understanding. Yes. After the first arbitration, Lincoln had paid a year's premiums in advance, correct? Correct. And that became a very important subject later on, because General Ree wanted to keep the premiums and not pay the claims. Am I correct about that? Well, that was the cash-based recapture that we had proposed and the arbitrators initially adopted. Paying the claims, as if I was an ordinary person walking on the street, that seems a little piggish. Well, I will not deny that that favors us. Yeah, you were going to keep the money and not pay the claims. But one-sidedness is not one of the grounds for revisiting an arbitration. It's coverage on its head. It is not one of the grounds for revisiting an arbitration. As the Court knows, there's a very short list of reasons when an arbitrator can revisit. The whole point of arbitration is that it's short. There is limited review, of course. Your position is the award was not ambiguous. The panel, or at least the majority of the panel, is saying it is ambiguous. Why would we not defer to that? They're saying our award is not clear, and we're going to second-guess them on that? Well, we believe that the Court is equally capable of—it's one sentence that's at issue, right? The answer is yes, you want us to second-guess them on their conclusion that their award is ambiguous. Yes, because what appeared to happen— Doesn't that seem contrary to the law on arbitration in general? No. I think that a court is equally capable of looking at a sentence to determine whether it's ambiguous or not. I believe that the arbitrators knew which buzzwords to use to insulate their second ruling from judicial scrutiny as best as they could. Ultimately, deference to them on that issue would essentially nullify the protections of functus officio, because it would mean that any time an arbitrator decides that they might want to redo an award— But that assumes that they want to redo the award. I mean, that assumes you're right on the first issue. And if you're wrong on the first issue, then they're not redoing their award. They're simply clarifying it. Well, that's our position, is that it was a material modification of the award. So I believe that deference to them on the ambiguity issue would essentially nullify the protections, because there would never be a ruling that you would say, oh, that's no good. If we disagree with you that the phrase all premium and claim transactions paid by one party or the other following the effective date of the recapture shall be unwound, if we disagree with you and say that we find that to be ambiguous, you lose, don't you? No, because it can still be ambiguous, and the clarification can be an impermissible modification, which I believe this was. Not just a recalculation. Not just a recalculation. It was left open how much to pay, wasn't it? Right. In fact, the award recognizes that. And they said come back to us if you can't figure out what to pay each other. Right. Under the law, a proper clarification must be consistent with the arbitrator's intent, and it must not modify the spirit or the basic effect of the award. Here what they did, the intent was very clear in the initial award that they were going to adopt what we had proposed. We were the only one that had proposed anything. What's a claim transaction? A claim transaction, it's paid. Is it when the person dies or is it when it's paid? Paid. Really? Because you became liable, say the unwind date is April 1st. Under your reinsurance agreements, if somebody died on March 15th, that's a claim accessible against your policy, right? It depends on when they would have made, but for this purpose it depends on when the claim would have been paid. Wait, no, it says claim transactions paid, right, by one party or the other. So you're rewriting the contract to say that it doesn't matter when they died, it's only when you paid it. Paid. That's what the sentence said. Wow. So that incentivizes you not to pay until after the recapture date so that even though you have 50, well, let me finish, 50 claims that occur, 50 people die in February and March. All of them covered by your, that you accepted a premium and you accepted the risk for. But you don't, because you didn't pay them, you don't have to pay it and Lincoln does. But that doesn't incentivize because this all happened well after the fact. The recapture, the arbitration was in 2015 and this all happened. Well, I know that, and that's part of the problem. Because it took so long, there are all kinds of other problems. Lincoln paid its premiums a year in advance. Lincoln also had rollover situations where they owed you money from the prior month and then they rolled it into a new premium. So there are a lot of calculations to unwind, aren't there? The only calculations to unwind is what did we pay after April 1st and what did Lincoln pay after. What did Lincoln pay after April 1st and then you unwind that. But you had a premium that you accepted for coverage after April 1st. You had to pay that back, didn't you? You acknowledged that, didn't you? They don't. No. Lincoln had paid you a premium for all of 2014. Right. You didn't have to pay back ProRata anything that covered after April 1st? It was a straightforward cash unwinding. So, no, we had to only pay back anything that we had paid. That's more than generous. That's what I figured out. You wanted to take the premiums and not pay the claims. Yes. Okay. Okay. I have admitted that this was in our favor. This is a good place to hear from Lincoln. You reserve two minutes from rubato. Thank you. May it please the court. Paul Hummer on behalf of Lincoln National. I am happy to answer any of your questions. I'm not surprised. I thought it would be helpful to start with sort of a big picture observation. Every argument that Jen remakes in this case starts from the premise that their interpretation of the award is correct and that there can only be one interpretation of the award. And the record makes it clear that both of those assumptions are wrong. Genree had an interpretation of its language, which as you have observed from your questions, was uniquely one-sided and largely inconsistent with the terms of the treaty. Lincoln had a second understanding of what that language meant. Isn't that your understanding to the first arbitration panel? The issue did not arise. Genree requested that language in the award. Lincoln did not object to that language in the award, and Lincoln does not object to that language in the award. The language in the first arbitration panel. Yes, and what's different, Lincoln does not think Genree interprets that language correctly, and the panel does not think that Genree interprets that language correctly. The second arbitration panel. It's the same panel, but the clarification award. Right. But I think the point is, it's not the language that we object to. It's the interpretation that is wrong. Genree's interpretation. And Lincoln never had that interpretation. Lincoln has a different interpretation of what that language means. Yes. Lincoln's view, which the panel said is correct, is that that language in the award has to be interpreted and understood in the context of the terms of the treaty that are not affected by the award. And those terms specifically were two. One is in Schedule F, which provides what's called unearned premium, is not refunded upon recapture. Unearned premium is what you refer to as the pro rata premium, so the amount we paid in advance. So Genree gets to keep that, the panel found in the clarification, under Schedule F of the agreement. But number two, pursuant to Section 4.1 of the reinsurance agreement, Genree has to pay claims that are associated with that premium. And what the panel said is, Section 6B1 of our award makes it clear that the recapture is pursuant to the treaty, and we would like to clarify for everyone that when you read 6B1, the unwinding is in the context of and does not change the obligations that Genree had under the treaty prior to the recapture date. So for premiums paid prior to April 1, 2014, which was the effective date of the recapture, Genree gets to keep those premiums, but they have a liability. And that's all that the clarification says. And that's not a change to the award. That's just simply we are explaining, that's how we intended this language to operate. It's the same language, 6B1. Yes, same panel, same explanation. Not quite the same. One person changes positions and there's a difference. They didn't change positions. The dissent was from the finding of whether or not there was a change in anticipated mortality that justified a rate increase. That was the only dissent? That's the dissent. The dissent expressly notes that he is not dissenting from the retained jurisdiction to address. But what about on the second decision of the arbitration? On the second decision, then. The dissent is more serious, right? I'm sorry. The dissent is more substantive. On the second decision, the dissent is by a different arbitrator who says, that's not what the language meant to me. And I think that's partly why it's clear that Genry's position that this can only be interpreted one way is wrong. Because even the panel had different understandings as to what that language meant when they actually thought about it and saw it in application. And I think there can be no better evidence of ambiguity than the fact that on a three-arbitrator panel, two of them view it one way and one of them use it a different way. They're all principled people. We're not suggesting anything wrong. But that suggests that the language was ambiguous. I think the final point that I would like to make, Mr. Balsam alluded to the fact that Genry thinks this was a change in the award. And you can read the clarification, and there is no change. The language of the award is unchanged. What the panel explains is, this is how you apply that language in the context of the treaty. Genry says, well, we owe $17 million more than we should have because you've changed the award. And, again, that gets back to the sort of false premise of Genry's arguments. Genry always owed the full $23 million to Lincoln under that award. It's just that Genry, because of its unique interpretation of that language, calculated that it owed much less. He's reading unwound to be repaid. He is. But the word that they put in, it's their word, unwound. I have a hard time understanding what that means unless I understand how reinsurance treatises are issued and the industry itself. And I guess the only other way to understand it also is to look at the agreement, and that's what the arbitrators did. That's exactly right, Your Honor. And the arbitrators made the point in the clarification that the recapture rights that were at issue were in the original treaty. Nothing changed the original treaty. And so the provisions of the original treaty needed to inform the understanding of the award. So the recapture is pursuant to the treaty. The liability for claims for premium paid prior to the recapture is pursuant to Section 4.1 of the treaty. And so all the panel is doing is saying, essentially, when you read the original award together with the treaty, the result is for premiums paid after April 1, 2014, Lincoln gets those back, and for claims paid related to those premiums, Gen. Rhee gets that back. But for premiums paid prior to April 1, 2014, Gen. Rhee keeps that premium and pays the claims that are related to it. That's it in a nutshell. That is entirely consistent with the treaty. It is entirely consistent with common sense. It's entirely consistent with everyone's understanding that if you get the premium, the claim liability follows. The only other thing I'd like to address in my remaining moment here is to step back and look at what Gen. Rhee is requesting that you do. Gen. Rhee is asking you to vacate the clarification but confirm the award. You know that the parties disagree fundamentally about what that award means, that the arbitration panel has said that it should be construed in this fashion. And so if you vacate the clarification, then you're left with an award that's essentially unconfirmable. Gen. Rhee argues that they didn't have the right under the doctrine that they cite functions of whatever, that they didn't have the right to go back and look at this again. Yes, I think they clearly did, Your Honor, for a couple of reasons. And then we would be left with the first decision that, as you point out, leaves us not knowing exactly who owes what to whom. Right. And if you were in that situation, all of the case law from this circuit and others counsels that what you would do is remand to the panel for them to tell you what they meant. You wouldn't substitute your own judgment as Mr. Balsam invites you to do. You would remand to the panel or the district court would remand to the panel so the panel could tell you what it meant in the award. That's . . . I'm curious because he doesn't object to sub 3, which anticipates that very thing if you can't agree to it. Correct. You go back to the arbitrators. That's exactly . . . In fact, also in the treaties, isn't it in section 10.3 that there's an arbitration clause, which is the very nature . . . So presume that the award was just confirmed and there was no subsequent quote, clarification by the panel and you got into this . . . We would . . . I won't tell you what we'd call it in upstate New York, but into this discussion about who owed what to whom, the remedy would be what? Arbitration. Exactly, Your Honor. And that's kind of the point. Here we are, thousands of pages of briefing later. The result that must be the result of this entire process is that the panel determines and informs the court about what its award is intended to do and who owes who what. That's exactly what has happened here and the appropriate result is exactly what the district court did, which is to confirm both the award and the clarification, give effect to what the panel said it intended, and resolve the dispute before it. Thank you. Thank you. Mr. Blossom, you've served two minutes for rebuttal. And I guess I would ask the first question is where we ended with Mr. Hummer. If we followed your advice and said that the second arbitration was inappropriate because of the doctrine of functious officio, I looked it up, what would we then do with this first award and who would pay what to whom? Well, I don't believe that there is a true calculation dispute over this award. It is a ledger calculation. A bookkeeper can look and see what Genry paid in claims after April 1st. That money gets returned to Genry. That same person could look to see what Lincoln paid in premiums after April 1st. That money gets returned to Lincoln. So it is a very simple and final strict cash unwinding. And so we calculated it at 5. We owed them $5.484 million. They didn't oppose that number. And, in fact, they used that number as the basis for their calculations as to what more we owed under their view or under the arbitrator's view. So I don't believe that there is a legitimate dispute over a calculation. I believe that they realized what that provision meant or how the numbers. I think they knew what it meant, but they realized how the numbers played out and realized that they didn't like the way the numbers played out. That's because they paid a year's premiums in advance and got no credit for those premiums. That's when they realized, hey, what's going on? Well, our view is then they should have aired that before the arbitrators when the five different times that we proposed it during the arbitration. Why didn't you just say repaid as opposed to unwound? Unwinding is a different concept, isn't it? You're trying to undo the relationship, and risk was assumed in some areas and premiums were paid for that. You're not unwinding the risk, are you, for the period of time for which you accepted premiums? You're unwinding any payments that were made after. You didn't answer my question. Did you unwind the risk that you'd assumed when you accepted the premiums? Well, the risk is only perspective. The risk is not perspective because if someone dies at a certain point in time and it's within your coverage period, you have to pay, don't you? Yes? Well, under normal principles, but this was a product of negotiation. This was a process of agreement. Fair enough. Thank you both. I understand you both traveled here from far away places. Good luck. Safe trip. Thank you. Thank you very much. The next matter on our calendar is-